IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KENNETH JELKS, #A0249413, | ) ) ) | CIVIL NO. 08-00108 JMS-LEK |
| Petitioner, | ) ) ) | ORDER DISMISSING PETITION AND DENYING PENDING MOTION |
| vs. | ) ) | |
| WARDEN SWENSON and CLAYTON FRANK, | ) ) ) | |
| Respondents. | ) ) | |
| _____ | ) | |

## ORDER DISMISSING PETITION AND DENYING PENDING MOTION

Pro se Petitioner Kenneth Jelks has filed a petition for writ of habeas

corpus under 28 U.S.C. § 2254 ("Petition"), challenging his mandatory minimum

term of imprisonment as imposed by the Hawaii Paroling Authority ("HPA").[1]

Respondents have filed an Answer to the Petition and Jelks has filed a Reply.

Both parties filed supplemental memoranda at the direction of the court.  After

careful consideration of the Petition, Answer, Replies, Supplements, and the entire

record before the court, the court finds that Jelks' first claim is barred by the

statute of limitation set forth in 28 U.S.C. § 2244(d), and his second claim is

dismissed without prejudice as unreviewable at this time.  The Petition is

---

[1] Jelks is a Hawaii prisoner incarcerated at the Saguaro Correctional Center ("SCC") in Eloy, Arizona.

DISMISSED in its entirety; claim one is DISMISSED with prejudice and claim two is DISMISSED without prejudice. Jelks' pending Motion, Doc. No. 19, is DENIED.

## I. BACKGROUND

On October 22, 1996, Jelks was convicted of attempted murder in the second degree and sentenced to a life term with the possibility of parole. Pet. at 1. The HPA set Jelks' mandatory minimum term at twenty years on April 17, 1997. Ans. App. A, "Notice and Order Fixing Minimum Term(s) of Imprisonment" ("Minimum Term Notice"). The Minimum Term Notice failed to specify Jelks' level of punishment or the significant criteria upon which his minimum term decision was based, as required by the HPA's 1989 Guidelines for Establishing Minimum Terms of Imprisonment ("HPA Guidelines").[2] The Hawaii Supreme Court affirmed Jelks' conviction and sentence on August 5, 1998, entering judgment on August 20, 1998. Jelks did not seek *certiorari* from the United States

_____

[2] Section III of the HPA Guidelines, entitled "Issuance of Decision," states:

The Order Establishing Minimum Terms of Imprisonment (DOC # 10029) will include the specific minimum terms(s) [sic] established in years and/or months, the level of punishment (Level I, II, or III) under which the inmate falls, and the significant criteria upon which the decision was based.

HPA Guidelines, avail. at http://hawaii.gov/psd/attached-agencies/hpa/Minimum_Guidelines.

Supreme Court.

More than five years later, on May 6, 2004,[3] Jelks filed his first Petition for post-conviction relief in the Circuit Court of the First Circuit, State of Hawaii ("circuit court"), pursuant to Rule 40 of the Hawaii Rules of Penal Procedure ("HRPP"), under S.P.P. No. 04-1-0003.[4]  Ans. App. B.  Jelks claimed that the HPA failed to credit him with approximately eleven days of presentence detention.  Jelks attached a copy of the 1997 Minimum Term Notice to the Petition, showing that he was clearly aware of his 20-year minimum term.  *Id.* at 29.  He did not, however, challenge either his minimum term or the Minimum Term Notice's failure to provide his level of punishment or criteria for setting the minimum term.  On February 24, 2005, the circuit court dismissed the Rule 40 Petition, finding that the HPA had actually overcredited Jelks by four days.  Ans. App. C.  On April 7, 2005, Jelks appealed.  *Id.* App. D.  On February 24, 2006, the circuit court entered an order concluding that Jelks' notice of appeal was untimely.

_____

[3] Jelks actually commenced this action on or before January 29, 2004, which is the date that the circuit court designated Jelks' original filing as a non-conforming petition for post-conviction relief, and directed him to file a supplemental petition. *See* Hawaii State Judiciary database, http://hoohiki1.courts.state.hi.us/jud/Hoohiki/main.htm ("Ho`ohiki"), 1PR04-1-000003, Doc. No. 1, "Order Designating Petition as Non-Conforming Petition for Post-Conviction Relief and Directing Petitioner to File Supplemental Petition."

[4] In Hawaii, Rule 40 petitions are treated as "special proceedings," and are considered part of the original criminal conviction, although they are given different "S.P.P." filing numbers. *See* HRPP 40(b).  They are not treated as separate civil actions.  "S.P.P." is the state court's docketing code for "Special Prisoner Proceeding."

*Id.* App. E.  On March 9, 2006, the Hawaii Supreme Court dismissed Jelks'

untimely appeal for lack of jurisdiction.  *Id.* App. F.

> While this Rule 40 Petition was pending, Jelks was also petitioning

the HPA to reduce his 20-year minimum term.  On June 29, 2004, Jelks wrote the

Hawaii Department of Public Safety ("DPS") Director John Peyton, questioning

why the HPA "rubber-stamped" his request for parole consideration.  *Id.* App. G,

Ex. H.  On August 27, 2004, Jelks wrote HPA Director Albert Tufono, demanding

a hearing detailing the criteria that was used by the HPA to set his minimum term.

*Id.*  On September 27, 2004, Jelks sent another request to the HPA for

reconsideration of his 20-year minimum term, or for an early parole hearing.  *Id.*

Ex. I.  On October 29, 2004, the HPA denied Jelks' requests.  *Id.* Ex. J.

Undeterred, on November 10 and 19, 2004, Jelks again requested a reduction of

his minimum term, which the HPA denied on April 25, 2005.  *Id.* Exs. K, L, & N.

On May 7, 2005, Jelks wrote the HPA requesting an explanation.  *Id.* Ex. O.  On

June 7, 2005, the HPA informed Jelks that his minimum term was not reduced

because it remained appropriate, and directed him to take his concerns to the court.

*Id.*

> In response to Jelks' numerous requests, and apparently recognizing

that the Minimum Term Notice did not conform to the HPA Guidelines, the HPA

issued an amended Minimum Term Notice ("Amended Notice") on June 28, 2005.

The Amended Notice clarified that Jelks' level of punishment was "Level III," set

forth the factors considered to determine their decision, and reiterated that his

mandatory minimum term of imprisonment was twenty years. *Id.* Ex. B. The HPA

did not, however, hold another minimum term hearing prior to issuing this

amended order.

   On August 23, 2005, Jelks filed an agency appeal of the HPA's

Amended Notice, docketed as Civ. No. 05-1-1510. On August 31, 2005, the

circuit court deemed the filing a "non-conforming petition for post-conviction

relief," terminated this case, and transferred it to the criminal division so that a

special prisoner proceeding could be opened.[5] On September 28, 2005, the circuit

court initiated a new case, Jelks' second Rule 40 post-conviction proceeding,

under S.P.P. 05-1-0061. Jelks then filed a conforming Rule 40 Petition on

November 30, 2005. Ans. App. G. In this proceeding, Jelks primarily protested

that the HPA impermissibly reset his punishment level from Level I to Level III.[6]

---

[5] Jelks made the same mistake when he filed his first Rule 40 Petition in S.P.P. 04-1-0003. *See supra* n.3; *see also* Hawaii Rules of Appellate Procedure ("HRAP") 40(c)(2).

[6] Jelks apparently misread the 1997 Minimum Term Order, because it contained neither the level of punishment nor the criteria used for the decision. *See* Ans. App. A. Jelks also claimed that his sentence was illegal under Hawaii Revised Statutes ("HRS") § 706-656, because the "[t]he jury was not instructed on all elements required to convict on the sentencing offense

(continued...)

*See id.* at 5, Grounds One and Two.  On March 24, 2006, the circuit court

dismissed this Petition.  *Id.* App. H.

On May 9, 2006,[7] Jelks filed a notice of appeal with the circuit court

as Hawaii's rules require, *see* HRAP 4(b)(1), but specifically sought review by the

Hawaii appellate courts.  *Id.* App. I.  Inexplicably, although Jelks (1) provided the

correct docket number, S.P.P. 05-1-0061; (2) referenced his criminal case number;

(3) explicitly stated that he "appeals to the Hawaii Supreme Court and the

Intermediate [C]ourt of Appeals, from the Circuit Court of the First Circuit,

pursuant to the Hawaii Rules of Penal Procedures, Rule 40. [sic] (h) Review[;]"

and (4) attached a copy of the order appealed from, this notice was never filed in

S.P.P. 05-1-0061, but was given a new **civil** docketing number, CC 06-1-00805.

*See id.* App. I.  On May 10, 2006, the circuit court judge assigned to this new civil

action dismissed Jelks' appeal, noting that the court lacked jurisdiction to consider

an appeal of another circuit court judge's decision.  *Id.* App. J.  To date, a separate

judgment has never been entered in CC 06-1-00805.

---

[6](...continued)
that must be proven beyond reasonable doubt., [sic] Nor was no seprerate [sic] hearing held to
enhance my level of punishment."  *Id.* App. G at 5, Ground Three.

[7] It appears that Jelks mailed the notice of appeal from the prison on April 22, 2006,
making the appeal timely under the prison mailbox rule.  *See Houston v. Lack*, 487 U.S. 266
(1988).

Approximately six months later, Jelks filed two "amended" appeals. First, Jelks filed an "Amended Notice of Appeal," directed to the Intermediate Court of Appeals ("ICA") and the Hawaii Supreme Court, on November 6, 2006. *Id.* App. K. Jelks titled this an "Agency Appeal," noted both docket numbers, CC 06-1-00805 and S.P.P. 05-1-0061, and again attached a copy of the order dismissing his second Rule 40 Petition. Although referring to the order dismissing his second Rule 40 Petition, Jelks states that this document is an appeal of the "order of dismissal for lack of jurisdiction . . . filed by the court on 5/10/06." *Id.* Jelks was therefore clearly seeking relief from the second circuit court judge's dismissal of his civil action in CC 06-1-00805.

Second, on November 30, 2006, Jelks filed another "Amended Notice of Appeal" to the ICA. Ans. App. L. This appeal again contains both docket numbers, CC 06-1-00805 and S.P.P. 05-1-0061, but is not captioned as an "Agency Appeal." Confusing matters even more, Jelks links this appeal to an order that was supposedly filed on **May 19**, 2006, although, if he was appealing the dismissal in CC 06-1-00805, that dismissal was entered on **May 10**, 2006, and if he was appealing the dismissal of S.P.P. 05-1-0061, that date was **March 24**, 2006.

On February 27, 2007, the ICA dismissed Jelks' appeals for lack of

jurisdiction. *Id.* App. M. The ICA noted that Jelks' appeals asserted a secondary appeal of the May 10, 2006 dismissal order in CC 06-1-00805, which was an "appeal to the circuit court from a different circuit court's March 24, 2006 'Decision and Order Dismissing Petition for Post-Conviction Relief Without a Hearing' in S.P.P. No. 05-1-0061." *Id.* at 2. The ICA stated that, regardless of how Jelks' appeal is characterized, whether as an appeal of a standard civil case or as an appeal of an agency decision, the appeal was premature because the circuit judge failed to file a separate judgment of the May 10, 2006 order, as required by Hawaii's civil rules and case law. *See* HRS § 641(a); Hawaii Rules of Civil Procedure ("HRCP") 58 & 72(d); *Jenkins v. Cades Schutte Fleming & Wright*, 76 Haw. 115, 119, 869 P.2d 1334, 1338 (1994). As such, the ICA held that Jelks' appeal was premature and that the court therefore lacked jurisdiction to consider it. The ICA apparently failed to consider the possibility that Jelks was actually attempting to appeal the March 24, 2006 Order dismissing his second Rule 40 Petition in S.P.P. 05-1-0061.

On April 2, 2007, Jelks filed an application for *certiorari* with the Hawaii Supreme Court, appealing the ICA decision. Jelks' application was rejected on April 26, 2007. Ans. App. N. Nearly a year later, on March 4, 2008, Jelks filed the instant Petition.

## II. LEGAL STANDARD

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). A prisoner may seek relief by way of a petition for writ of habeas corpus only if he is in custody pursuant to the judgment of a state court, and only if that custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000).

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529

U.S. at 412-13.

## III. <u>DISCUSSION</u>

Jelks raises two claims in support of his Petition. First, he argues that the HPA violated its own guidelines when it issued his first Minimum Term Notice on April 17, 1997, and omitted his level of punishment and the criteria used to determine that level and his minimum term. Second, Jelks argues that the HPA impermissibly amended his mandatory minimum term of imprisonment on June 28, 2005, when it issued the Amended Notice. Pet. at 6; *see also* Mem. in Supp. Jelks argues that the HPA's actions violated due process, equal protection, double jeopardy, and freedom from ex post facto punishment. Jelks apparently believes that the HPA impermissibly changed his level of punishment from Level I to Level III when it issued the Amended Notice, although there is no level of punishment shown on the original 1997 Minimum Term Notice.

Respondents argue that Jelks' claims are unexhausted and time-barred. Jelks counters that he has fully exhausted his claims because the Hawaii Supreme Court denied *certiorari*, and that, if his claims are time-barred, he is entitled to both statutory and equitable tolling of the statute.

///

///

## A.    Section 2244

Under § 2244(d), a one-year limitation period applies to applications for writs of habeas corpus, subject to certain tolling provisions.[8] *See also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting statutory tolling under 2244(d)(2) to state, not federal petitions); *Corjasso v. Ayers*, 278 F.3d 874, 877-79 (9th Cir. 2002) (holding that, on a showing of extraordinary circumstances, equitable tolling may apply to part or all of a federal petition).  The court must assess the timeliness of an inmate's claims on a claim-by-claim basis.  *Pace v.*

---

[8] Section 2244(d) provides in pertinent part:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —

  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*DiGuglielmo*, 544 U.S. 408, 415-16, & n.6 (2005).

## B. Claim One Is Time-barred

Jelks' first claim, that the HPA violated its own guidelines when it issued his 1997 Minimum Term Notice without specifying his level of punishment or the criteria used to determine his minimum term, is clearly untimely. Jelks' conviction and sentence were affirmed on August 5, 1998, and became final on November 4, 1998. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (holding that conviction becomes final when time expires for filing *certiorari* with the U.S. Supreme Court). Barring statutory or equitable tolling, the statute of limitation expired one year later.

Jelks filed his first Rule 40 Petition, tangentially challenging his conviction and sentence, but focusing on the HPA's alleged failure to properly credit him with sufficient days of pre-trial custody, on May 6, 2004, approximately *four and a half years* after the statute of limitation on his claim expired. Despite his admitted knowledge and receipt of the allegedly faulty Minimum Term Notice, Jelks did not raise this claim in his first Rule 40 Petition. *See* Ans., App. B at 29.[9] Because he waited more than five years after his conviction became final, and

---

[9] Appendix B is a copy of Jelks' first Rule 40 Petition, to which he has attached as "App. e" a copy of his original Notice of Minimum Term, dated April 17, 1997.

12

more than four years after the limitation period expired, before seeking relief in the state court, and he clearly knew of the factual basis for this claim during that time, Jelks is not entitled to tolling under § 2244(d)(1)(D) or (d)(2). *See Redd v. McGrath*, 343 F.3d 1077, 1082 (9th Cir. 2003) (finding that the statute of limitation commences when the inmate knows, or through the exercise of due diligence could discover, the factual predicate of his claims, not when the inmate learns the legal significance of those facts). Nor does this claim raise a newly recognized, retroactively applicable constitutional right. *See* 28 U.S.C. § 2244(d)(1)(C). Jelks is not entitled to statutory tolling on these bases.

Jelks argues that he is entitled to equitable tolling, and suggests that he is entitled to statutory tolling under § 2244(d)(1)(B), because he had no access to information concerning AEDPA's statute of limitation since his incarceration, and in fact, has not had adequate access to that information until August 2008. *See Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (holding that a lack of information regarding AEDPA's statute of limitation can, in some circumstances, provide a basis for equitable tolling of the statute, and remanding for an evidentiary determination). Jelks claims that, even though he was employed as an inmate law clerk at the Diamondback Correctional Facility from 2001 to 2006, and more recently at the Red Rock and Saguaro Correctional

Centers in Arizona since 2006, none of these facilities had information concerning § 2244's statute of limitation. Jelks supplies his own and other inmate's affidavits attesting to this allegation, as well as an unsigned and undated prison grievance alleging that Diamondback's law library had no information on either AEDPA or the Prison Litigation Reform Act of 1995. *See* Pet'r Reply, dated Aug. 28, 2008; Ortiz and Calderwood[10] Decls.; Ex. A.

Under certain conditions the statute of limitation may be equitably tolled. *Pace*, 544 U.S. at 418; *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). To qualify for equitable tolling, the petitioner "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. "[T]he threshold necessary to trigger equitable tolling [under AEDPA], is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and citation omitted). This high bar is necessary to effectuate "AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being

_____

[10] Calderwood's own federal petition for writ of habeas corpus was dismissed as time-barred on June 6, 2008. *See Calderwood v. Luna*, Civ. No. 07-00520 DAE, Doc. No. 29. Calderwood also sought equitable tolling, based on a lack of accessibility to the prison law library. Judge David Alan Ezra, after a thorough evidentiary review of Calderwood's actual access to the Diamondback law library, rejected Calderwood's claim. Calderwood's appeal is pending.

forced to hear stale claims." *Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003) (internal quotation marks and citation omitted). Equitable tolling determinations are "highly fact-dependent." *Whalem/Hunt*, 233 F.3d at 1148; *accord Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002) (observing that equitable tolling determinations "turn[ ] on an examination of detailed facts").

Respondents submit a declaration from Deana Espinas, DPS head of library services, stating that the Halawa Correctional Facility, where Jelks was incarcerated from January 1997, until October 1998, had copies of the U.S. Code Annotated, Title 28, including § 2244. Resp'ts Aug. 26, 2008 Supp. Br.; Espinas Decl. Respondents also provide declarations from prison officials in Arizona and Oklahoma attesting that, during all periods that Jelks was incarcerated in their prisons, from 2001 to the present, the U.S. Code Annotated, Title 28, including all provisions of the AEDPA, was available to Jelks and that they have no records of any grievances filed by Jelks complaining of his inability to access any volume of the U.S. Code. Resp'ts Jul. 17, 2008 Supp. Br.; Blair, Stolc, and Thomas Decls. These declarations are supported by invoices for legal materials purchased for, or subscribed to by, the Diamondback, Red Rock, and Saguaro prisons, showing that all three facilities had either computer or hard copies of Title 28 of the U.S. Code Annotated, during all periods that Jelks was incarcerated at each respective

facility.  *See id.*, Exs. 1-4.[11]  These documents and exhibits conclusively show that Jelks has had access to the statute of limitation provided for in § 2244, since 1997 and after.

Moreover, in direct contravention of his claim that he has had no knowledge or information regarding AEDPA's statute of limitation until 2008, the court notes that Jelks was put on notice of the statute of limitation no later than June 8, 2006, the date he signed his first federal habeas petition in this court.  *See Jelks v. Blair, et al.*, Civ. No. 06-00426 SOM.[12]  This petition contains the full text of 28 U.S.C. § 2244(d).  Jelks acknowledged the statute's applicability to his Petition when, in response to the Petition's question concerning the timeliness of the claims presented, Jelks responded "Timely Collateral Challenge," effectively conceding that he had read the information provided and was asserting that his challenge to the HPA's Amended Notice was timely.  Civ. No. 06-00426 SOM, Doc. No. 1, Pet. 13 ¶ 18.

Finally, Jelks himself supplies evidence refuting his own allegation.

---

[11] These invoices also show that these prisons had available to them updated copies of "Habeas Corpus Checklists," "Prisoner Rights" and other treatises, the federal rules, the Hawaii rules, and current caselaw.

[12] In that petition, Jelks challenged the HPA's Amended Notice of his minimum term. Jelks admitted, however, that his appeal in his second Rule 40 Petition was still pending, so this federal petition was dismissed without prejudice.  *See* Civ. No. 06-00426 SOM, Doc. No. 7, Order Dismissing Petition; *see also Sherwood v. Tomkins*, 716 F.2d 632 (9th Cir. 1983).

Jelks attaches a letter dated January 20, 2006, from the Office of Disciplinary

Counsel of the Hawaii Supreme Court, to his August 28, 2008 Reply.  Pet'r Aug.

28, 2008 Reply, Ex. B.  The letter's unidentified author informs Jelks that, on

*October 24, 2005*, the author was assigned to review Jelks' appellate case files,

because Jelks' appellate attorney, Valerie Vargo, had died.  This letter's final

page, however, is actually the closing page from a different letter to Jelks, *signed*

*by Vargo*.  This page, which was apparently written *before* Jelks' direct appeal

concluded in 1998, and was apparently in response to Jelks' questions concerning

how to file a Rule 40 Petition at the conclusion of his direct appeal, also responds

to Jelks' *questions regarding AEDPA's statute of limitation.*[13]  Vargo's response

---

[13] This page states in pertinent part:

[the] majority of defendants who file such petitions either represent themselves or
retain an attorney at their own expense.

  On page 2 of your letter, you refer to the "AEDPA statute of limitations*."*
I have no idea what this means.  I have never heard of "AEDPA", and there is no
statute of limitations on filing a Rule 40 proceeding.  (I was recently appointed to
represent a defendant who filed a Rule 40 proceeding <u>nineteen years</u> after his
conviction became final).  You may file the petition at any time after the appeal
has been decided.
. . .
Very truly yours,

Valerie A. Vargo

Pet'r Aug. 28, 2008 Reply, Ex. B.

makes certain that, at a minimum, Jelks knew that the AEDPA contained a statute of limitation before Vargo's death, and likely before his direct appeal was concluded in 1998, as he was already questioning its application before his appeal was final.

In light of the overwhelming evidence before the court, it is clear that Jelks has had access to information concerning AEDPA's statute of limitation since his incarceration in 1997 and thereafter. There has been no state-created impediment to Jelks' receiving that information and Jelks is not entitled to equitable or statutory tolling for this claim. Jelks' first claim, as it relates to the HPA's 1997 Minimum Term Notice, is DISMISSED with prejudice as time-barred.

## C.     Claim Two Is Dismissed Without Prejudice

Jelks claims that the HPA impermissibly amended his 1997 Minimum Term Notice when it issued the June 28, 2005 Amended Notice.[14] Jelks relies on

------

[14]Jelks bases this claim on his misplaced belief that the 1997 Minimum Term Notice set his punishment at Level I, entitling him to a 5-10 year minimum term, and the Amended Notice placed him at Level III, requiring a 20-50 year minimum term. *See* HPA Guidelines § II (detailing levels of punishment). Jelks continues to assert this claim, despite all evidence known to him to the contrary, including that: (1) the HPA guidelines show that, to be assessed a 20-year minimum term on a sentence of life with parole, a prisoner must be determined to be a Level III; (2) the 1997 Minimum Term Notice contains no level of punishment, but clearly shows Jelks' 20-year minimum, which can only mean that Jelks was determined to be a Level III when it was issued; (3) HPA deputy director Tommy Johnson carefully explained this to Jelks in 2005, *see*

(continued...)

*Coulter v. State*, 116 Haw. 181, 172 P.3d 493 (2007), decided more than a year

after the circuit court dismissed Jelks' second Rule 40 Petition and four months

before he filed the present Petition.[15]  Jelks alleges that the HPA's action was

arbitrary and capricious, and it therefore violated due process, equal protection, ex

post facto protections and double jeopardy by issuing the Amended Notice.

Before Jelks can proceed with this claim in federal court, he must

show that it is timely, and that he exhausted his state court remedies with regard to

this claim.  *See Rose v. Lundy*, 455 U.S. 509 (1982); *Fields v. Waddington*, 401

F.3d 1018, 1020 (9th Cir. 2005); 28 U.S.C. § 2254(b)(1)(A).[16]  Due to the

---

[14](...continued)
Ans.  App. G, Ex. D; and (4) the circuit court also made this clear when it denied Jelks' second
Rule 40 petition, *see* Ans. App. H.

[15] *Coulter* holds that (1) the HPA violates its own guidelines by failing to detail the level
of punishment and criteria on a Minimum Term Order; and (2) issuing an Amended Order, with
an entirely new parole board, without holding a new hearing, and only after the defendant files a
petition for post-conviction relief, does not "cure" the original violation.  The Hawaii Supreme
Court carefully declined, however, to decide whether this violates either the state or federal
constitutions, and confined its holding to a narrow finding that it is a violation of HPA guidelines
only.  116 Haw. at 184-85, 172 P.3d at 496-97.

[16] The purpose of the exhaustion doctrine is to preserve federal-state comity which
provides state courts an initial opportunity to correct violations of its prisoners' federal rights.
*Picard v. Connor*, 404 U.S. 270, 275 (1971); *Ex parte Royall*, 117 U.S. 241, 251 (1886); *Sweet v.
Cupp*, 640 F.2d 233, 236 (9th Cir. 1981) (holding that exhaustion requirement is a matter of
comity, intended to afford the state courts the "first opportunity to remedy a constitutional
violation.").
    Although exhaustion may sometimes be excused where it is clearly futile, requiring Jelks
to return to the state courts here, as discussed below, is not such a situation.  *See* 28 U.S.C.
§ 2254(b)(1)(A); *Coe v. Thurman*, 922 F.2d 528, 530 (9th Cir. 1990) (finding that extraordinary
(continued...)

exceedingly murky state procedural history relating to this claim, however, this court cannot conclusively determine whether this claim is timely or exhausted on the present record.

Jelks knew of the factual predicate for his claim on June 28, 2005, when the HPA issued its Amended Notice. He filed his second Rule 40 Petition raising the claim fifty-six days later, in S.P.P. 05-1-0061, tolling the statute of limitation. *See* 28 U.S.C. § 2244(d) and (d)(2). The circuit court dismissed the Rule 40 Petition on March 24, 2006, and Jelks timely attempted to file an appeal. For reasons unknown, the state court determined that Jelks' notice of appeal was not an appeal in his criminal proceeding in S.P.P. 05-1-0061, and opened a new *civil* action, denominating it an agency appeal, in CC 06-1-00805. As it therefore appeared to be an improper appeal of one circuit court judge's decision to another circuit court judge, it was duly dismissed. From that point, the state court treated Jelks' filings as premature appeals of a civil action that was not yet final. Jelks' appeals were dismissed on this basis by the ICA and *certiorari* was summarily denied by the Hawaii Supreme Court. But it is unclear what has become, or will

---

[16](...continued)
delay in state courts can render state corrective processes ineffective within meaning of §2254(b) and excuse exhaustion); *Sweet*, 640 F.2d at 236 (finding that exhaustion requirement may be avoided by showing that it would be futile in light of prevailing decisions of highest state court).

become, of Jelks' appeal in his criminal action, S.P.P. 05-1-0061.

To clarify, Jelks was proceeding pro se. He is therefore entitled to some leniency and a liberal construction of his pleadings. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) ("We construe the complaint liberally because it was drafted by a pro se plaintiff."). Jelks seems to have followed Hawaii's procedural rules. His appeal was timely under HRAP 4(b), which governs appeals in criminal actions, he attached a copy of the order he appealed from to his notice, and he explicitly stated that he sought to appeal the dismissal of his Rule 40 Petition to the Hawaii appellate courts. Nonetheless, through clerical error or misunderstanding, Jelks' appeal in S.P.P. 05-1-0061 was *misdocketed* as a new civil action, and this error has never been corrected.[17]

Because Jelks has not sought clarification of what has happened in S.P.P. 05-1-0061, or at least not made this inquiry clear, the state court has never considered or ruled on his appeal in that action. It is possible that, if Jelks returns to the state court and makes his request clear, the state court will correct its

---

[17] Jelks, however, was not otherwise particularly diligent in pursuing his rights. When the second circuit court dismissed his attempted appeal the day after it was filed, Jelks did nothing for almost six months. He then filed two similarly confusing appeals of that decision, both of which refer to the dismissed Rule 40 Petition, but are obvious attempts to appeal the civil order in CC 06-1-00805. After the Hawaii Supreme Court denied *certiorari* on Jelks' apparently premature appeals, he waited another year before filing the present Petition.

apparent docketing error and proceed with his appeal in S.P.P 05-1-0061. If so, Jelks' claim is still pending in the state court, the statute of limitation is still tolled, and this claim is, by definition, unexhausted.

On the other hand, it is possible that the state court will inform Jelks that he is procedurally barred from proceeding with his appeal in S.P.P. 05-1-0061, because he did not properly present or file his appeal. If so, Jelks' present Petition is likely both time-barred and possibly unexhausted.[18] Until the state court clarifies the procedural posture of S.P.P. 0501-0061, however, this court cannot make that determination.

The Hawaii appellate courts may accept Jelks' explanation and consider his appeal, with the advantage of the *Coulter* decision, decided after the circuit court rejected Jelks' claims. *See Engle v. Isaac*, 456 U.S. 107, 130 (1982). It is for the Hawaii courts to determine whether, under *Coulter*, Jelks is entitled to a new hearing before the HPA may issue an Amended Notice of Jelks' minimum term. It would be improper for this court to substitute its judgment on Jelks' claim without the benefit of the state appellate courts' interpretation of those claims. In the interests of comity, Jelks' second claim, that the HPA violated its own

---

[18] As the record stands, this court cannot determine whether any exception to the exhaustion doctrine applies to this claim.

guidelines when it issued the Amended Notice, is DISMISSED without prejudice to refiling after the state court has conclusively determined his appeal in S.P.P. 05-1-0061.

**D.  Jelks' Pending Motion Is Denied**

On July 14, 2008, Jelks moved for an order directing prison officials to return his "documents, mail, paper's [sic] and legal materials," allegedly seized on April 24, 2008.  Doc. No. 19.  Jelks alleges that this confiscation was unjustified and racially motivated.

Respondents have filed documents showing that on April 16, 2008, documents were confiscated from Jelks' cell.  Jelks was apparently engaging in the unauthorized practice of law, advertising his legal services to other inmates.  Doc. No. 28; *see* Exs. C-E.  On April 24, 2008, Jelks was found guilty of "Conspiracy and Failure to Follow."  *Id.*, Ex. B.

After reviewing Respondents' exhibits, and in light of this court's disposition of this action, the court finds that the confiscation of Jelks' documents has not negatively impacted his prosecution of *this case*.  Jelks' Motion is DENIED.

///

///

## IV.  <u>CONCLUSION</u>

Jelks' first claim, relating to his April 15, 1997 Notice and Order Fixing Minimum Term(s) of Imprisonment, is DISMISSED with prejudice, as time-barred.  Jelks' second claim, relating to his June 28, 2005 Amended Notice and Order Fixing Minimum Term(s) of Imprisonment, is DISMISSED without prejudice after a final determination is rendered by the state courts.  Jelks' Motion for an order directing the prison officials to return his documents, mail, and legal materials, Doc. No. 19, is DENIED.

The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 25, 2008.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Jelks v. Thomas, et al.*, Civ. No. 08-00108 JMS; Order Dismissing Petition and Denying Pending Motion; dmp/ habeas 08/ Jelks 08-108 JMS (Ord dsm timebar)