IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| KENNETH JELKS, #A0249413, | ) ) | CIVIL NO. 08-00108 JMS-LEK |
|---|---|---|
| Petitioner, | ) ) ) ) | ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT AND GRANTING IN PART REQUEST |
| vs. | ) ) | FOR CERTIFICATE OF APPEALABILITY |
| WARDEN SWENSON and CLAYTON FRANK, | ) ) ) | |
| Respondents. | ) ) | |
| _____ | ) | |

## ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT AND GRANTING IN PART REQUEST FOR CERTIFICATE OF APPEALABILITY

### I. INTRODUCTION

On September 25, 2008, the court dismissed pro se Petitioner Kenneth Jelks' ("Petitioner") petition for writ of habeas corpus brought under 28 U.S.C. § 2254. Doc. No. 36, "Order Dismissing Petition and Denying Pending Motion" ("September 25 Order"). The Petition raised two claims ("Claim One" and "Claim Two"): Claim One challenged Petitioner's 1997 Minimum Term Notice setting his mandatory minimum term of imprisonment, and Claim Two challenged his 2005 Amended Minimum Term Notice.[1] Claim One was dismissed

---

[1] Although the Petition set forth only one ground for relief, the court liberally construed
(continued...)

with prejudice as timebarred, and Claim Two was dismissed without prejudice as unreviewable, due to its unclear procedural posture in state court. Petitioner now moves for relief of judgment. Petitioner also seeks a certificate of appealability ("COA"). The Motion for Relief of Judgment is DENIED and the request for COA is GRANTED IN PART.

## II. **MOTION FOR RELIEF FROM JUDGMENT**

Petitioner seeks reconsideration of the dismissal of Claim One with prejudice as timebarred. Petitioner continues to assert that he is entitled to equitable tolling of the statute of limitation due to his alleged inadequate access to information about the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") statute of limitation during his incarceration. *See* 28 U.S.C. § 2244(d). Petitioner also argues that the court should have appointed a special master to determine whether he was entitled to equitable tolling.

///

///

---

[1](...continued)
the Petition and Memorandum in Support as presenting two claims: that the Hawaii Paroling Authority ("HPA") violated its guidelines when it (1) issued Petitioner's 1997 Minimum Term Notice without specifying his level of punishment or the criteria used to determine his minimum term; and (2) issued an Amended Minimum Term Notice in 2005 containing the omitted information, but allegedly changing his level of punishment from Level I to Level III without holding a new hearing. Petitioner's minimum term, twenty years, remained unchanged.

## A. Standard of Review

When, as here, a motion for reconsideration does not identify the Rule under which it was filed, courts within the Ninth Circuit construe it as filed under Federal Rule of Civil Procedure 59(e) if it was filed within ten days of the filing of the judgment, *see Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 863 (9th Cir. 2004), or under Rule 60(b) if filed more than ten days after judgment, *see Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001). Petitioner's Motion was filed more than ten days after judgment was entered, and is therefore reviewed under Rule 60(b).

Rule 60(b) provides for reconsideration where one or more of the following is shown: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered within ten days of entry of judgment; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief. Fed. R. Civ. P. 60(b); *Sch. Dist. 1J v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Only three grounds justify reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact in order to prevent

manifest injustice. *See Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1178-79 (9th Cir. 1998). To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *See, e.g.*, *Kern-Tulare Water Dist. v. City of Bakersfield,* 634 F. Supp. 656, 665 (E.D. Cal. 1986). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citation omitted).

**B.    Discussion**

Petitioner presents no intervening change in controlling law or newly discovered evidence not previously available justifying reconsideration. Thus, the only portion of Rule 60(b) possibly applicable here is subsection (6): "extraordinary circumstances" justifying relief. Rule 60(b)(6) permits a district court to relieve a party from a final order or judgment for "any other reason that justifies relief." *See Fantasyland Video, Inc. v. County of San Diego*, 505 F.3d 996, 1005 (9th Cir. 2007) (recognizing that courts use this provision sparingly as an equitable remedy to prevent manifest injustice where extraordinary circumstances are present).

The court has therefore carefully reviewed the record and relevant case law governing this claim to determine whether extraordinary circumstances

exist counseling reconsideration, and remains convinced that dismissal with prejudice of Claim One was correct. *See Jimenez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001) (affirming dismissal with prejudice of an unexhausted claim that would be timebarred if later refiled after exhaustion was satisfied). In light of Petitioner's Motion and the questions presented in his Request for COA, the court clarifies the basis for its decision to dismiss this claim with, rather than without, prejudice.

Petitioner's original Minimum Term Notice was issued on April 17, 1997; his direct appeal concluded on August 20, 1998. Although it is unclear whether Petitioner raised any claim concerning the 1997 Minimum Term Notice on direct appeal, it is certain that he did not raise the claim in either of his two petitions for post-conviction relief brought pursuant to Rule 40 of the Hawaii Rules of Penal Procedure.[2] Moreover, whether exhausted on direct appeal or not, Claim One is untimely because Petitioner failed to raise the claim in federal court

---

[2] In his first Rule 40 petition, filed May 6, 2004, Petitioner argued: (1) that the HPA miscalculated his presentence sentencing credits; (2) that he was denied effective trial counsel and a fair probable cause hearing; (3) that he was denied effective appellate counsel; and (4) unlawful arrest.

In his second Rule 40 Petition, filed August 23, 2005, after the HPA issued the Amended Minimum Term Notice, he argued: (1) that the 2005 Amended Minimum Term Notice was an "excessive and arbitrary/capricious abuse of legislative intentions[,]" and a "Procedural Bar;" and (2) "Illegal sentence[,]" apparently based on the HPA's failure to hold a new minimum term hearing before issuing the 2005 Amended Minimum Term Notice. Resp't. Ans., Ex. G 5-6.

5

until March 4, 2008, nearly ten years after his conviction and sentence were final.

Because of this, and notwithstanding Claim One's uncertain procedural posture regarding its exhaustion, the court turned to whether Petitioner was entitled to either statutory or equitable tolling of this claim. Petitioner was not entitled to statutory tolling under § 2244(d)(1)(C), (D), or (d)(2). *See* Sept. 25 Order at 13. Petitioner argued, however, that he was entitled to tolling due to a lack of information concerning the AEDPA's statute of limitation at his respective prisons, and supplemental briefing was ordered. *See Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (holding that a lack of information regarding the AEDPA's statute of limitation can, in some circumstances, provide a basis for tolling the statute).

Respondents presented conclusive evidence showing that Petitioner's respective prisons had copies of the AEDPA statute of limitation since his incarceration in 1997.[3] Although Petitioner now "objects" to Respondents' declarations, he provides no competent evidence refuting them or refuting

---

[3] Respondents submitted copies of invoices for legal materials purchased for or subscribed to by the Halawa, Diamondback, and Saguaro Correctional Facilities, showing that their respective law libraries maintained copies of the U.S. Code Annotated, Title 28, including § 2244(d), during all periods that Petitioner was incarcerated therein. Respondents also provided declarations from these prisons' wardens and from the Department of Public Safety's head of library services attesting that Petitioner submitted no claims, complaints, or grievances relating to his inability to access these prisons' law libraries or the materials within those libraries at any time.

Respondents' other documentary evidence.

Petitioner's own submissions also clearly showed that he had access to information about the AEDPA's statute of limitation long before he filed the present petition.[4]  Finally, even discounting the evidence submitted by both parties, court records show that Petitioner was aware of the AEDPA's statute of limitation on June 8, 2006, the date he signed his first petition for writ of habeas corpus filed in this court.  *See Jelks v. Blair, et al.*, Civ. No. 06-00426 SOM.  That petition contained the complete language of § 2244(d), and Petitioner explicitly acknowledged the statute of limitation's applicability to his claims on page thirteen.  Thus, there was no state-created impediment to Petitioner's timely filing Claim One and he was not entitled to tolling of the statute of limitation under § 2244(d)(1)(B).

The court further found that Petitioner was not entitled to equitable tolling of Claim One, a claim Petitioner reasserts now.  *See Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (holding that equitable tolling applies "only if extraordinary circumstances beyond a prisoner's control make it impossible to file

---

[4] Petitioner's Exhibit B to his August 28, 2008 Reply strongly suggests that he was aware of the AEDPA's limitation period as early as 1998, and no later than October 24, 2005, the date that his attorney's files were given to a trustee after her death.  *See* Sept. 25 Order at 16-18 (discussing Exhibit B in detail).

a petition on time"); *Espinoza-Matthews v. People of the State of Cal.*, 432 F.3d 1021, 1026 (9th Cir. 2005). As explained in the September 25 Order and above, the evidence before the court provides no basis for equitable tolling. First, equitable tolling is not available based on ignorance of the law unattributable to purposeful state action. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (holding that ignorance of the law does not justify equitable tolling); *Marsh v. Soares*, 223 F.3d 1217, 1220 (9th Cir. 2000) ("[I]t is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.") (citation and quotation signals omitted). Second, the record clearly shows that Petitioner knew about the statute of limitation no later than June 8, 2006, when he filed his first federal habeas petition, and likely far earlier. Third, the record also reflects Petitioner's lack of diligence in pursuing his rights in this court and in the state courts. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418-19 (2005) (holding that diligence is lacking and equitable tolling is inappropriate when an inmate waits for years to assert his state post-conviction and federal habeas corpus rights). Petitioner was aware of the 1997 Minimum Term Notice's language and his twenty-year minimum term since 1997, yet apparently never challenged his twenty-year minimum term until filing his second Rule 40 petition after he was denied an early release hearing in 2005 and the

Amended Term Notice was issued. Even then, Petitioner did not challenge the 1997 Minimum Term Notice's alleged failure to abide by HPA guidelines, as he does now. He did not make this claim until he filed this Petition in 2008, after the Hawaii Supreme Court issued *Coulter v. State*, 116 Haw. 181, 172 P.3d 493 (2007), decided more than a year after the state circuit court dismissed his second Rule 40 Petition and four months before he filed the present Petition. Petitioner waited six months after his second Rule 40 action was improperly dismissed on appeal before seeking clarification. He then waited almost a full year after the Hawaii Supreme Court denied certiorari in his misdocketed case before attempting to bring this claim to the federal court. This timeline shows a considerable lack of diligence. To the extent Petitioner reasserts that he is entitled to equitable tolling in this Motion, that argument is rejected as previously considered and ruled upon, as well as presenting no new evidence supporting reconsideration.

Finally, the court also rejects the argument that Petitioner was denied access to his respective prisons' law libraries, and therefore could not access information regarding the AEDPA and its limitation period.[5] Petitioner raised this

---

[5] The court liberally construes Petitioner's statement that, "[t]he question[] presented is not whether the specific material were at [Petitioner's respective prisons], the question is was Mr. Jelks . . . allowed the opportunity to brows[e], access, research this specific law materials," as asserting a denial of access to prison law libraries. *See* Mot. at 2.

argument, albeit in an ambiguous and muddled fashion, before the September 25 Order was issued.[6] The court considered the argument and rejected it based on several factors. First, Petitioner consistently asserted that he is and was an inmate writ or law clerk at the Diamondback, Red Rock, and Saguaro Correctional Facilities.[7] Petitioner stated that, in that capacity from 2001 to 2006 at Diamondback, he attempted to alert prison authorities to the "missing law books, [in] particular Title 28 U.S.C.A § 2244 Newly adopted of the AEDPA[.]" Pet'r Aug. 28 Optional Reply in Opp'n at 2. He also stated that while at Red Rock, "around about September 19, 2006 *when he opened the Hawaii Juliet Unit law library*, [he] *witnessed first hand* that none of the U.S.C.A Annotated core

---

[6] *See e.g.*, Doc. No. 14, Pet'r June 9, 2008 Optional Reply to Resp't Ans. at 5-6 ("The absece [sic] AEDPA legal information in the facility law library was not accessible and relevant at the time Petitioner entered the CCA old and new private prisons under the adequacy of their inoperable law libraries."); Doc. No. 32, Pet'r Aug. 28, 2008 Optional Reply in Opp'n at 2-4 ("The questions presented for review is not whether the Department allegely [sic] paid for a service but rather did the Hawaii male inmates have access to a direct computer program Title 28 U.S.C. § 2244 of the AEDPA and the statute of limitation."); Doc. No. 35, Pet'r Sept. 22, 2008 Supp'l Br. in Opp'n to Resp't Br. at 6.

[7] *See, e.g.*, Doc. No. 32, Pet'r Aug. 28, 2008 Optional Reply in Opp'n at 2-3 ("Petitioner Jelks insist [sic] that as the Hawaii law clerk from 2001 to 2006 at the Diamondback Correction Facility," and "[Petitioner] around about September 19, 2006 . . . opened the Hawaii Juliet Unit law library [at Red Rock Correctional Center]."); Doc. No. 35, Pet'r Sept. 22, 2008 Supp'l Br. in Opp'n to Resp't Br. at 7 ("Petitioner finds [] it ironic . . . [that] the Department was without knowledge that I had established employment as the Hawaii law clerk for almost seven (7) years rendering impeccable authorized assistance."); Doc. No. 32, Pet'r Optional Reply in Opp'n, Ex. E (providing documentation from "The School of Paralegal Studies," recognizing that Petitioner completed the "Professional Paralegal Honors Program" in 1998).

collection was not there[.]" *Id.* at 3.  Petitioner also admitted that, because he "was subject to high security" he was scheduled for library on Mondays while at the Saguaro facility, *id.* at 6 (although he claimed that the U.S. Code was not available to him there).  These statements directly contradict and undermine Petitioner's claim that he lacked physical access to these prisons' law libraries.

Second, Respondents provided sworn declarations that Petitioner submitted no letters, complaints, or grievances regarding lack of access to the prison law libraries or an inability "to locate or otherwise access any volume of the U.S. Code at any of his prisons."  *See* Resp't July 17, 2008 Supp'l Br., Stolc, Thomas, & Blair Decls.; Resp't August 11, 2008 Supp'l Br., Espinas Decl.  Other than his own self-serving and confusing statements that the AEDPA information was unavailable to him, Petitioner provided no competent evidence refuting either Respondents' declarations or the invoices showing that the AEDPA material was in fact available to him during all relevant times.

Third, as noted above, Petitioner was aware of the AEDPA statute of limitation when he wrote to his appellate attorney requesting information about it, and acknowledged it when he filed his first federal habeas petition, regardless of whether he had access to the prisons' law libraries.  Based on the entire record, the court rejected any claim that Petitioner was not allowed access to the various

11

prisons' libraries.

In light of the overwhelming evidence that Claim One was untimely and not subject to statutory or equitable tolling, the court dismissed the claim with prejudice, because even if Petitioner were now to exhaust this claim in state court, his delay in doing so presents "an absolute time bar to refiling [Claim One] after his state claims [are] exhausted." *Jimenez*, 276 F.3d at 482; *see also Pace*, 544 U.S. at 415-16 (directing courts to assess the timeliness of an inmate's claims on a claim-by-claim basis).

Moreover, based on the abundant unrefuted documentary evidence before the court, neither a special master nor an evidentiary hearing was warranted in this matter. *See* Rule 8 of the Rules Governing Section 2254 Cases; *see also Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002) (observing that equitable tolling determinations "turn[ ] on an examination of detailed facts").

A motion to reconsider is not another opportunity for the losing party to make its strongest case, reassert arguments, or rehash previously presented unmeritorious arguments. Reconsideration motions do not give parties a "second bite at the apple." Nor are they justified on the basis of new evidence which could have been discovered prior to the court's ruling. Petitioner presents no intervening change in controlling law; no discovery of new evidence not

previously available; and no need to correct clear or manifest error in law or fact in order to prevent manifest injustice. In short, there are no extraordinary circumstances warranting a reconsideration of the September 25 Order. The Motion for Relief from Judgment is DENIED.

### III. CERTIFICATE OF APPEALABILITY

Petitioner's grounds for seeking a COA can be summarized as: (1) he is entitled to equitable tolling for Claim One; (2) Claim One should have been dismissed without prejudice; (3) the Petition should have been stayed as a mixed petition; (4) he presented sufficient evidence of actual innocence to allow review of his claims under *Schlup v. Delo*, 513 U.S. 298 (1995); and (5) Claim Two should have been reviewed on the merits due to the state courts' mishandling of his appeal of this claim in his second Rule 40 post-conviction petition.

**A.     Standard of Review**

A petitioner must obtain a COA to appeal a final order denying a habeas corpus petition. 28 U.S.C. § 2253(c)(1)(A). The court may issue a COA only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000), sets forth the standard for evaluating a COA request when the petition is denied on procedural

grounds without reaching the merits of the claim. In such a case, a COA shall issue if the petitioner makes two showings. *Id.* at 484-85. First, the petitioner must show that reasonable jurists would find it "debatable whether the petition states a valid claim of the denial of a constitutional right." *Id.* at 484. Second, a petitioner must show that reasonable jurists would find it "debatable whether the district court was correct in its procedural ruling." *Id.* Both showings are required before a COA will be issued. *See Lambright v. Stewart*, 220 F.3d 1022, 1026-27 (9th Cir. 2000).

**B.   Discussion**

As discussed *supra*, Petitioner is not entitled to statutory or equitable tolling of Claim One, nor should that claim have been dismissed without prejudice. Moreover, even if the record conclusively showed that Claim One was exhausted on direct appeal, which it did not, the Petition could not be stayed under *Rhines v. Weber*, 544 U.S. 269 (2005), because Petitioner failed to show good cause for failing to exhaust Claim One and it is plainly meritless due to its untimeliness. *Id.* at 277 (stating "the district court would abuse its discretion if it were to grant [] a stay when . . . claims are plainly meritless"). Reasonable jurists would not find it debatable that Claim One's dismissal with prejudice and without a stay presents either a valid claim of the denial of a constitutional right or that this

14

court was incorrect in its procedural ruling.

Petitioner also seeks a COA based on his new argument of actual innocence. As to Claim One, although a credible claim of actual innocence will excuse a habeas petitioner's procedural default, *see Schlup*, 513 U.S. at 314-15, neither the Supreme Court nor the Ninth Circuit has yet held that a credible claim of actual innocence tolls AEDPA's one-year statute of limitation. *See Majoy v. Roe*, 296 F.3d 770, 778 (9th Cir. 2002) (remanding to the district court to determine whether the petitioner had established a claim of actual innocence, and if so, to next decide "what consequence such a finding has with respect to AEDPA's one-year statute of limitations"). If such an exception applies, *Majoy* indicates that district courts should first consider whether a petitioner is actually innocent before deciding if an actual innocence exception to the statute of limitation exists. *Id.* at 777-78.

Petitioner, however, made no claim of actual innocence in the Petition and presents no argument for it in his request for COA. To clarify, Petitioner claims that the HPA first failed to follow its guidelines when it omitted necessary information on the 1997 Minimum Term Notice, and then failed to follow the guidelines when it issued the 2005 Amended Minimum Term Notice without holding a new minimum term hearing. These are not claims of actual innocence of

15

the underlying crime, but simply disputes regarding his minimum term notices. Moreover, even assuming the actual innocence gateway provides a basis for equitable tolling here, and he made such a claim, Petitioner presents no new evidence to support this claim. *See House v. Bell*, 547 U.S. 518 (2006) (holding that a credible gateway claim "requires new reliable evidence"). Petitioner's "actual innocence" claim as to Claim One does not support a gateway for this court to review the claim on its merits.

As to Claim Two, the court has not determined that Petitioner's claims here are unexhausted but procedurally barred. To the contrary, the court has withheld any decision concerning Claim Two until the procedural posture of the claim can be determined. And again, Petitioner made no claim of actual innocence and presents no new evidence of actual innocence. *Id.* Reasonable jurists would not find it debatable that Petitioner's new claim of actual innocence presents a valid claim of the denial of a constitutional right.

Finally, Petitioner seeks a COA arguing that this court should have reviewed Claim Two on the merits due to the state courts' mishandling of his appeal of this claim in his state post-conviction motion. This court carefully considered whether review on the merits of Claim Two was warranted, and in fact, ordered supplemental briefing twice to shed light on Petitioner's claims and the

state courts' apparent mishandling of Petitioner's appeal. *See* Doc. Nos. 15 & 18. Based on the (1) exceedingly murky procedural history concerning this claim; (2) very real possibility that Petitioner still has the ability to properly seek appeal in his second Rule 40 petition presenting the claim; and (3) possibility that the Hawaii state courts would look again at Petitioner's claim in light of *Coulter v. State* (decided after his second Rule 40 petition was denied but before it was reviewed on appeal), this court dismissed Claim Two without prejudice.

This decision was made in the interests of comity between the state and federal courts, the possibility that Claim Two did not even present a federal claim,[8] and a belief that the more prudent course of action was to let the state courts decide whether the Hawaii Paroling Authority's failure to abide by its own internal guidelines warranted relief in this case. The court cannot say, however, that reasonable jurists could not disagree with this determination. Accordingly, the COA is GRANTED as to the limited question of whether this court should have reached the merits of Claim Two rather than dismissing the claim without

---

[8] *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (stating that "federal habeas corpus relief does not lie for errors of state law"); *Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (per curiam) (stating that federal courts do not normally review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (stating that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures); *Shanks v. Wolfenbarger*, 387 F. Supp. 2d. 740, 752 (E.D. Mich. 2005) (holding that habeas petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence).

prejudice as unexhausted.

## IV.  **CONCLUSION**

For reasons stated herein, the court DENIES Petitioner's Motion for Relief of Judgment.

The request for certificate of appealability is GRANTED IN PART, on the limited issue of whether Claim Two should have been reviewed on the merits rather than dismissed without prejudice pending exhaustion of the claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 20, 2008.



/s/ J. Michael Seabright
———————————————
J. Michael Seabright
United States District Judge

*Jelks v. Thomas, et al.*, Civ. No. 08-00108 JMS; Order Denying Motion For Relief From Judgment and Granting in Part Request for Certificate of Appealability; pro se attys/ Recon Ords/DMP/2008/ Jelks 08-108 JMS (dny hab #2)