IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| KENNETH JELKS, #A0249413, | ) ) ) | CIVIL NO. 08-00108 JMS-RLP |
|---|---|---|
| Petitioner, | ) ) ) ) | ORDER DISMISSING PETITION AND DENYING CERTIFICATE OF APPEALABILITY |
| vs. | ) ) | |
| WARDEN TODD THOMAS, CLAYTON FRANK, | ) ) ) | |
| Respondents. _____ | ) ) | |

**ORDER DISMISSING PETITION AND
DENYING CERTIFICATE OF APPEALABILITY**

Before the court is pro se Petitioner Kenneth Jelks' petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 ("Petition"). The Petition was remanded from the United States Court of Appeals for the Ninth Circuit, for consideration of Jelks' second claim: that the Hawaii Paroling Authority ("HPA") violated its guidelines when it issued an amended order clarifying the notice that set his minimum term of imprisonment. Respondents have filed a Supplemental Answer to the Petition and an addendum updating the court on Jelks' recently scheduled minimum term hearings. Doc. Nos. 51, 56. Jelks has filed several Replies and addenda. Doc. Nos. 53, 54, and 57. For the reasons set forth below, the Petition is DISMISSED with prejudice and a certificate of appealability is

DENIED.

## I. BACKGROUND AND PROCEDURAL HISTORY

On October 22, 1996, Jelks was convicted in the Circuit Court of the First Circuit, State of Hawaii ("circuit court"), of attempted murder in the second degree. He was sentenced to a life term with the possibility of parole. On April 15, 1997, the HPA held a hearing to determine Jelks' minimum term. *See* Doc. No. 6-3, Att. 2,[1] "Notice and Order Fixing Minimum Term(s) of Imprisonment" ("1997 Notice"). Jelks was represented by counsel at the hearing. On April 17, 1997, the HPA set Jelks' minimum term at twenty years. *Id.* The 1997 Notice did not specify Jelks' level of punishment or the significant criteria upon which Jelks' minimum term decision was based, as required by the HPA's 1989 Guidelines for Establishing Minimum Terms of Imprisonment ("1989 HPA Guidelines").[2] The Hawaii Supreme Court affirmed Jelks' conviction and entered judgment on August

---

[1] For clarity, the court cites to the court's CM/ECF docket numbers. The Petition is Doc. No.1; Respondent's Answer is Doc. No. 6, with 17 attachments. Thus, Respondent's Mem. in Support is Doc. No. 6-2, Att. 1, pp. 1-13.

[2] Section III of the 1989 HPA Guidelines, entitled "Issuance of Decision," states:

> The Order Establishing Minimum Terms of Imprisonment (DOC No. 10029) will include the specific minimum terms(s) established in years and/or months, the level of punishment (Level I, II, or III) under which the inmate falls, and the significant criteria upon which the decision was based.

Avail. at http://hawaii.gov/psd/attached-agencies/hpa/Minimum_Guidelines.

20, 1998.  Jelks did not seek *certiorari* from the United States Supreme Court.

In 2004, Jelks filed his first petition for post-conviction relief pursuant to Rule 40 of the Hawaii Rules of Penal Procedure ("HRPP"), under S.P.P. No. 04-1-0003.  Doc. No. 6-4, Att. 3.  Jelks claimed that the HPA failed to credit him with eleven days of presentence detention.  Jelks did not challenge his twenty-year minimum term or the 1997 Notice's omission of his level of punishment or the criteria used for setting the minimum term.  On February 24, 2005, the circuit court dismissed this Rule 40 Petition for lack of merit.  Doc. No. 6-5, Att. 4.  Jelks appealed and the circuit court concluded that his notice of appeal was untimely.  Doc. No. 6-7, Att. 6.  On March 9, 2006, the Hawaii Supreme Court dismissed Jelks' untimely appeal for lack of jurisdiction.  Doc. No. 6-8, Att. 7.

While the first Rule 40 Petition was pending in state court, Jelks was petitioning the HPA directly to reduce his twenty-year minimum term.  In 2004, Jelks sought reconsideration of his minimum term or an early parole hearing.  *See* Doc. Nos. 6-9, 6-10, Atts. 8 & 9, (App. G, Parts 1 & 2), "Petition for Post-Conviction Relief."  The HPA denied Jelks' requests on October 29, 2004.  Doc. No. 6-10, Att. 9 at 31.  Jelks continued seeking a reduction of his minimum term in November 2004, which the HPA denied on April 25, 2005.  *Id.* at 33-41.  On May 7, 2005, Jelks wrote the HPA requesting an explanation.  *See id.,* at 44.  On June 7,

2005, the HPA informed Jelks that his minimum term remained appropriate and directed him to take his concerns to the court. *Id.* at 44.

Apparently recognizing that the 1997 Notice did not conform to the HPA's 1989 Guidelines, however, the HPA issued an amended Notice and Order Fixing Minimum Term(s) ("2005 Notice") on June 28, 2005. Doc. No. 6-9, Att. 8 at 36. The 2005 Notice clarified that Jelks' level of punishment was "Level III," set forth the factors it had considered when it determined his minimum term,[3] and reiterated that his minimum term of imprisonment was twenty years. *Id.* The HPA did not hold another minimum term hearing prior to issuing the 2005 Notice.

On November 30, 2005, Jelks filed his second Rule 40 Petition ("Second Rule 40 Petition") alleging that the 2005 Notice illegally increased his level of punishment from Level I to Level III, resulting in a longer minimum term.[4] Doc. No. 6-9, Att. 8 at 1-8. On March 24, 2006, the circuit court dismissed the Second Rule 40 Petition as patently frivolous. Doc. No. 6-11, Att. 10. The circuit court found that the 1997 Notice *omitted* Jelks' level of punishment but never set it at Level I, and that Jelks' minimum term had always been twenty years. *Id.* at 3.

---

[3] Those factors were: "(1) Nature of Offense; (2) Criminal History; (3) Character and Attitude of Offender With Respect to Criminal Activity or Lifestyle." *See* Doc. No. 6-9, Att. 8 at 36.

[4] The circuit court designated this petition as a non-conforming Rule 40 post-conviction proceeding and directed Jelks to file a supplemental pleading. *See* Doc. No. 6-10, Att. 9 at 52.

Jelks attempted to appeal, *see* Doc. No. 6-12, Att. 11, but due to a series of docketing and clerical errors the Hawaii Intermediate Court of Appeals ("ICA") dismissed Jelks' appeal on February 27, 2007, without reaching the merits of his claims. *See* Doc. Nos. 6-13-6-15, Atts. 12-14. On April 26, 2007, the Hawaii Supreme Court rejected Jelks' application for *certiorari*. Doc. No. 17, Att. 16.

Jelks signed the instant Petition on February 26, 2008; it was received and filed on March 4, 2008. *See* Doc. No. 1, Pet. The Petition claims that the HPA: (1) incorrectly set Jelks' minimum term at twenty years in the 1997 Notice ("Claim One"); and (2) improperly enhanced Jelks' level of punishment from Level I to Level III when it issued the 2005 Notice ("Claim Two"). Jelks alleges this violated HPA guidelines and his rights to due process, equal protection, double jeopardy, and freedom from *ex post facto* punishment. Doc. No. 1, Pet. at 5; Doc. No. 4, Mem. in Support at 4-10.

On September 25, 2008, this court dismissed the Petition, holding Claim One was time-barred and Claim Two was unreviewable without clarification from the state court. Doc. No. 36, "Order Dismissing Petition and Denying Pending Motion." Jelks appealed, arguing that he properly exhausted Claim Two. The Ninth Circuit upheld the dismissal of Claim One, but vacated and remanded Claim Two. *See* Doc. No. 47. The court held that, "[b]ecause the available state

process appears to be ineffective to protect whatever federal rights Jelks may have in relation to the 2005 Order and Notice, Jelks is not required to pursue further efforts to exhaust his state court remedies before seeking a federal forum for his due process challenge" in Claim Two. *Id.* at 2.

On March 31, 2011, the HPA notified Jelks that it was scheduling a new minimum term hearing for him. *See* Doc. No. 51-2. The HPA set the hearing for May 16, 2011. Doc. No. 56 at 4. Jelks, however, refused to sign or return the HPA's forms so that his counsel could be notified and given the relevant information. On May 16, 2011, Jelks refused to participate in the hearing. The HPA has rescheduled another minimum term hearing to be held in July 2011.

## II. <u>LEGAL STANDARD</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some violation of federal law binding on the state courts. *See Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1994); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). A federal writ is not available for an alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085.

"Federal habeas relief may not be granted for claims subject to

§ 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 785 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (internal citations modified); 28 U.S.C. § 2254. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Additionally, a state court's factual determinations "shall be presumed to be correct," on federal habeas review, and a petitioner can overcome that presumption only by "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir. 2000).

## III.  **DISCUSSION**

Jelks alleges that the HPA violated its own guidelines, state law, and the Due Process, Equal Protection, Double Jeopardy, and Ex Post Facto Clauses of the United States Constitution when it issued the 2005 Notice, allegedly changing his Level I punishment status to Level III.  This, he claims, resulted in a greater minimum term, without being afforded a new minimum term hearing as required by *Coulter v. State*, 116 Haw. 181, 172 P.3d 493 (2007).[5]  To clarify, Jelks is not challenging the denial or revocation of parole, or an amended judgment of sentence in his criminal case.  Jelks is challenging the 2005 Notice -- an amended HPA notice and order that clarified the basis for originally setting his minimum term of imprisonment at twenty years, but did not change his minimum or maximum term of imprisonment or in any other way affect his 1997 judgment of conviction or sentence.  Jelks seeks an order "correcting" his Level III status to Level I, which he believes would result in a new minimum term of five to ten years.  Jelks recognizes

---

[5] *Coulter* was decided seven months after the Hawaii Supreme Court denied review in Jelks' Second Rule 40 Petition, so this question was never presented to the state courts.  *Coulter* holds that (1) the HPA violates its own guidelines by failing to detail the level of punishment and criteria on a Notice and Order Fixing Minimum Term; and (2) when an entirely new parole board issues an amended Notice and Order Fixing Minimum Term without holding a new hearing, and does so only after the defendant files a petition for post-conviction relief, it does not cure the original violation.  *Coulter v. State*, 116 Haw. 181, 184-85, 172 P.3d 493, 496-97 (2007).  The remedy is a new minimum term hearing.  *Id.* at 187, 172 P.3d at 499.  The Hawaii Supreme Court explicitly declined to consider whether this violation of HPA guidelines also violates the state or federal constitutions.

that the remedy for his claim is to "vacate[] and remand[] back to the HPA for immediate habeas releif [sic]," that is, for a new minimum term hearing, but argues that, because he has already served more than ten years, he is entitled to release. Doc. No. 4, Mem. in Support at 7; Doc. No. 53 at 3.

Respondent argues that Claim Two is moot because the HPA has scheduled a new minimum term hearing for Jelks, in compliance with the requirements set forth in *Coulter*. *See* Doc. No. 51-2. Respondent further argues that Claim Two is untimely and without merit.

**A.     Jelks' Factual Claim Underlying this Petition is Frivolous**

The entire premise for Claim Two centers on a single allegation -- that Jelks was originally classified as a Level I offender and the HPA changed this to a Level III classification in the 2005 Notice. The state circuit court found this allegation patently frivolous and without a trace of support in the record. Doc. No. 6-11, Att. 10. This court agrees and Jelks has not shown otherwise. In fact, Jelks produces no evidence that he was ever classified as a Level I offender; rather, he willfully misconstrues the 1997 Notice, and all of his arguments that follow from this misconception are meritless.

The 1997 Notice explicitly fixed Jelks' minimum term at twenty years. It omitted Jelks' level of punishment and the criteria used for setting his

minimum term, but it clearly refers to Jelks' single sentence of "Life With [Parole]" and states that the number of minimum terms set by the order is: "1." Doc. No. 6-3, Att. 2. This correctly represents that Jelks was convicted of *one* crime, the court imposed *one* life term with the possibility of parole for that conviction after twenty years, and that Jelks was therefore subject to the setting of *one* minimum term. The only indication in the 1997 Notice of Jelks' <u>level of punishment</u> is the fact that his minimum term was set at twenty years, a term that can only apply to a Level II or III offender, but not to a Level I offender.[6]

Although Jelks argues that he was originally set at a Level I, he offers no evidence whatsoever in support of this claim. Instead, Jelks simply concludes that, because the 1997 Notice did not specify his level of punishment, he was a Level I. *See* Doc. No. 6-9, Att. 8, Second Rule 40 Pet. at 5. He provides no written discussions with his attorney, the court or prosecutor, or the HPA to that effect, or any other document or transcript supporting this contention. Jelks also fails to provide any evidence showing that he fits the criteria defining a Level I offender, showing that: (1) he displayed simple disregard, rather than a

---

[6] *See* 1989 HPA Guidelines at 2 (showing that a defendant sentenced to a maximum term of Life with Parole may be subject to a minimum term of five to ten years as a Level I offender, ten to twenty years as a Level II offender, and twenty to fifty years as a Level III offender). *See* Doc. No. 6-9, Att. 8 at 39 ; also avail. at http://hawaii.gov/psd/attached-agencies/hpa/Minimum_Guidelines.

10

"substantial" or "cruel" disregard for the safety and welfare of others; (2) the injury or loss suffered by his victim was less than that experienced by others similarly situated; (3) he had no more than one prior felony conviction since he was eighteen years old; (4) it was unlikely he would offend again; (5) it was likely he would respond positively to parole; (6) his current imprisonment resulted from the revocation of probation due to a violation or another less serious conviction; or (7) that he was a young adult offender under Haw. Rev. Stat. § 706-667. *See* Doc. No. 6-9, Att. 8 at 40-41, 1989 HPA Guidelines at 3-4. Nor does Jelks provide evidence rebutting the three specific factors the HPA relied on to determine his Level III status and twenty-year minimum term, as set forth in the 2005 Notice: the nature of his offense, the degree of injury/loss to his victim, and his criminal history. *See* Doc. No. 6-10, Att. 9.

The 2005 Notice did not raise Jelks from Level I to Level III; instead, it again fixed his minimum term at twenty years and corrected the 1997 Notice to include the previously omitted level of punishment. Both the 1997 Notice and the 2005 Notice, however, explicitly show that Jelks' minimum term was twenty years, meaning he was never considered a Level I offender. Jelks' claims are unsupported by the record and otherwise rely on state law. As such, they are DISMISSED with prejudice as frivolous.

11

**B.     No Federal Constitutional Violation**

Jelks claims that the HPA violated his rights to due process, equal protection, freedom from double jeopardy, and *ex post facto* punishment when it issued the 2005 Notice without first holding a minimum term hearing.  Even if Jelks' claims were supported by evidence, he fails to raise a Federal Constitution violation.

### *1.     Due Process*

"There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners."  *Swarthout v. Cooke*, --- U.S. ---, 131 S. Ct. 859, 862 (2011) (per curiam); *Greenholtz v. Nebraska*, 442 U.S. 1, 7 (1979).  State statutes and constitutions "may create liberty interests in parole release that are entitled to protection under the Due Process Clause."  *Board of Pardons v. Allen*, 482 U.S. 369, 371 (1987) (citing *Greenholtz*, 442 U.S. at 12).  Hawaii's parole statutes, however, do not create a liberty interest in parole.  *See*, *e.g.*, *Mujahid v. Apao*, 795 F. Supp. 1020, 1024 (D. Haw. 1992) ("[A] proper application of *Greenholtz* requires the court to conclude that the Hawaii parole statute does not create a liberty interest protected by the Due Process Clause."); *Regan v. State*, 2007 WL 4440956, at *2 (D. Haw. Dec. 19, 2007).  Having no liberty interest in

parole, Jelks has no liberty interest in the setting of a minimum term to determine when, if ever, he is eligible for parole. *See Williamson v. Haw. Paroling Auth.*, 97 Haw. 183, 195, 35 P.3d 210, 222 (2001) (stating, "the determination of a prisoner's minimum term is part of the parole process").

Even if Jelks had a liberty interest in the setting of his minimum term, he received all the process to which he was entitled in 1997, when the HPA held his minimum term hearing, at which he was represented by counsel, and issued the 1997 Notice fixing his minimum term at twenty years. *See Swarthout*, 131 S. Ct. at 862 ("In the context of parole, we have held that the procedures required are minimal."); *Greenholtz*, 442 U.S. at 16 (finding adequate process when a prisoner denied parole was allowed an opportunity to be heard and provided a statement of the reasons for the denial). Any right to a second minimum term hearing before the HPA issued the 2005 Notice, which simply clarified the 1997 Notice but did not materially alter Jelks' sentence or judgment, was purely a state procedural right, not a substantive federal requirement. *See Swarthout*, 131 S. Ct. at 862.

### 2. *Double Jeopardy*

The Double Jeopardy Clause provides: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It "serves the function of preventing both successive punishment

and successive prosecution," *United States v. Dixon*, 509 U.S. 688, 704 (1993), and "protects against . . . the actual imposition of two punishments for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995); *accord Monge v. California*, 524 U.S. 721, 727-28 (1998). Jelks was convicted of attempted murder in the second degree and sentenced to life with the possibility of parole with a minimum term of twenty years. His maximum and minimum terms have never changed, nor has he been successively prosecuted or punished. The Double Jeopardy clause does not apply to Jelks' situation.

   3.   *Ex Post Facto*

The Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. A law violates the Ex Post Facto Clause if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. *Collins v. Youngblood*, 497 U.S. 37, 52 (1990). Thus, it "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003) (quoting *Souch v. Schaivo*, 289 F.3d 616, 620 (9th Cir. 2002)); *see also Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995).

The Ex Post Facto Clause may also be violated if: (1) state regulations are applied retroactively to a defendant; and (2) the new regulations create a "sufficient risk" of increasing the punishment attached to the defendant's crimes. *Garner v. Jones*, 529 U.S. 244, 259 (2000); *Himes*, 336 F.3d at 854.

The HPA did not increase Jelks' punishment, apply a new "law," punitive legislation, or new state parole procedure when it issued the 2005 Notice. The HPA simply complied with its own guidelines, in effect since 1989, and clarified Jelks' level of punishment and criteria for imposition of his minimum term. The HPA did not violate the Ex Post Facto Clause.

### 4. *Equal Protection*

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Turner v. Safley*, 482 U.S. 78, 84 (1987); *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003); *Johnson v. California*, 207 F.3d 650, 655 (9th Cir. 2000) (per curium). To state a claim for a violation of the Equal Protection Clause, a prisoner must allege evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *see also Serrano*, 345 F.3d at 1082.

Jelks alleges no facts indicating that the HPA acted with

discriminatory intent when it issued the 2005 Notice, or treated him differently than some other class of inmates. Rather, the 2005 Notice suggests that the HPA was simply rectifying its clerical error, and the *Coulter* decision and its progeny show that Jelks was not the only inmate whose original notice of minimum term was later corrected in the same manner without a hearing. Jelks has had three years to provide evidence of discrimination and has not done so. The HPA did not violate Jelks' right to equal protection when it issued the 2005 Notice.

**C.     Jelks' Claim for Relief Under *Coulter v. State* is Moot**

A case becomes moot when it no longer satisfies the case-or-controversy requirement of Article III, Section 2, of the Constitution. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). The case-or-controversy requirement demands that the parties continue to have a personal stake in the outcome of a federal lawsuit through all stages of the judicial proceedings. *Id.* "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). A habeas petition is moot when the petitioner's claim for relief cannot be redressed by issuance of a writ of habeas corpus by the habeas

court.[7] *See Spencer*, 523 U.S. at 7; *Burnett v. Lampert*, 432 F.3d 996, 1000-01 (9th Cir. 2005). "Mootness is jurisdictional." *Burnett*, 432 F.3d at 999.

Even if Jelks were entitled to federal habeas relief under *Coulter*, the question becomes, is he entitled to release or simply to a new minimum term hearing? *See Burnett*, 432 F.3d at 999 ("Our [mootness] analysis is specifically limited to the sort of equitable relief we may grant in response to a habeas petition, the only type of relief [the petitioner] seeks."); *Coulter*, 116 Haw. at 186, 172 P.3d at 498. Jelks seeks release; Respondent asserts he is only entitled to a new hearing.

"Federal courts have a fair amount of flexibility in fashioning specific habeas relief[,]" and are "free to fashion the remedy as law and justice require and [are] not required to order [a] petitioner's immediate release from physical custody." *Burnett*, 432 F.3d at 999; *see also Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (internal quotation marks omitted). Rather, habeas "relief should place [the] petitioner in the same position he would have been in if his due process rights had not been violated." *Milot v. Haws*, 628 F. Supp. 2d 1152, 1158 (C.D. Cal. 2009).

---

[7] There is a well-established exception to the mootness doctrine for cases that are "capable of repetition, yet evading review," that applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer*, 523 U.S. at 17 (internal quotations omitted). This exception does not apply to Jelks.

Jelks is subject to a term of life with the possibility of parole; he has no federal constitutional right to release earlier than his maximum term. Jelks did not present his *Coulter* claim to the Hawaii state courts before he commenced this action. If he had, the state remedy for his claim is a new minimum term hearing, not immediate release. *See Coulter*, 116 Haw. at 187, 172 P.3d at 499. The HPA attempted to schedule Jelks for a new hearing in May 2011, and has rescheduled another hearing for July 2011. Jelks cannot circumvent this process in the hopes that he will be granted release by the federal court, simply by refusing to cooperate with the HPA or to attend a new minimum term hearing. Jelks' claim for relief is moot, whether he attends the new minimum term hearing in July, or he again refuses to participate.

## IV. **CONCLUSION**

Jelks' claims in Ground Two are without merit and the Petition is DISMISSED with prejudice.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether Jelks is entitled to a certificate of appealability in the same order in which the petition is decided. Jelks has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this court's denial of his claim

debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case. The Clerk of Court shall enter judgment and close the file.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, June 29, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Jelks v. Thomas et al.*, Civ. No. 08-00108 JMS/RLP; Order Dismissing Petition and Denying Certificate of Appealability; psas/habeas/dmp/ 2011/ Jelks 08-108 JMS (dsm dny ct 2)